UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) NO. 5:19-CV-82-CHB-MAS |
| JEREMY WIGGLESWORTH, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Joe Hands Promotions, Inc. ("JHP") seeks a default judgment against Defendant Jeremy Wigglesworth. The Court finds that JHP is entitled to default judgment per Rule 55(b)(2), and recommends the motion be granted, in part.

### I. BACKGROUND

JHP is a corporation that commercially distributes and licenses closed-circuit sporting event viewing to bars, restaurants, etc. JHP filed suit against Defendants Chez Vidal Marks and Jeremy Wigglesworth, individually, and as officers, directors, shareholders, members, and/or principals of Vidal LLC d/b/a Vidal's on Main Sports Bar & Grill, and Vidal LLC d/b/a Vidal's on Main Sports Bar and Grill for broadcasting an Ultimate Fighting Championship ("UFC") match,[1] which JHP had exclusive distribution rights to, at a commercial business without paying the sublicense fee required by JHP. [*See* DE 27-1 (Commercial Licensing Agreement), 27-4 (Affidavit of Joe Hand)]. JHP served the Summons and Complaint upon Defendants on March

---

[1] *Ultimate Fighting Championship 203: Miocic v. Overeem.*

16, 2019. [DE 8]. Chez Vidal Marks and Vidal LLC were ultimately dismissed from the case via settlement. [DE 17]. Wigglesworth initially had counsel, but counsel withdrew from representation on March 3, 2020. [DE 21]. Wigglesworth failed to make the timely substitution nor address the subsequent show cause order. [DE 22]. JHP moved for an entry of default, which the clerk entered on April 21, 2020, pursuant to FED. R. CIV. P 55(a). [DEs 24-25].

## II. ANALYSIS

### A. FACTS SUPPORTING ENTRY OF A DEFAULT JUDGMENT

Default entry by the Clerk, under Rule 55(a), necessarily precedes default judgment application under Rule 55(b). *See, e.g.*, *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d. 345, 352 (6th Cir. 2003). A defaulting party effectively admits all well-pleaded allegation in the Complaint, excluding allegations relating to unliquidated damages. *See Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Construction v. U.S. Fidelity and Guaranty*, 661 F.2d 119, 124 (6th Cir.1981)) ("Once a default is entered against a defendant, that party is deemed to have admitted all of the well pleaded allegations in the Complaint, including jurisdictional averments."). The Court, however, accepting the non-defaulting party's account of events, must ensure that allegations establish the defaulting parties' liability. *Anderson v. Johnson*, 194 F.3d 1311 (Table), 1999 WL 1023753, at *2 (6th Cir. Nov. 4, 1999).

Here, JHP alleges it is an aggrieved party under 47 U.S.C. §§ 553 and 605 because it had a proprietary interest in the intercepted communications described above. JHP only requests damages under § 605. [DE 27, at Page ID # 78 (citing *Kingvision Pay-Per-View Corp., LTD v. Wright*, 2006 WL 4756450 at *2 (M.D. Fla. 2006) ("[w]hen a defendant is liable under both §§553 and 605, an aggrieved plaintiff may recover damages under only one section.")]. JPH alleges facts in its complaint which, supported by numerous exhibits, establish that Defendants violated §

2

605(a).[2] *See, e.g., Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001) (explaining that § 605 "defines what constitutes the unauthorized publication or use of electronic communications" and "includes such prohibited practices as the divulgence of wire or radio communications by persons authorized to receive them to others who are not so authorized, and the interception of any radio communication by a person not authorized to receive that communication from the sender"); *J & J Sports Prods., Inc. v. Jaschkowitz*, 2016 WL 2727015, at *2 (E.D. Ky. May 6, 2016) (stating § 605 statute applies "centrally[,] but not exclusively[,] to satellite transmissions"); *Joe Hand Promotions, Inc. v. Easterling*, 2009 WL 1767579, at *4 (N.D. Ohio June 22, 2009) (noting that § 605 is strict liability statute, but "intent is relevant to the calculation of plaintiff's remedies[.]").  Defendants broadcasted a UFC event that JPH had propriety rights to without acquiring proper licensing privilege. [*See* DE 1 (Complaint), 27-1 (Commercial Licensing Agreement) and 27-4 (Affidavit of Joe Hand)].  Furthermore, JHP also established that Wigglesworth is individually liable for the bar's § 605(a) violation.  *Joe Hand Promotions, Inc. v. Pat's Snack Bar*, LLC, 2020 WL 1923178, at *3 (E.D. Ky. Apr. 21, 2020) (noting that the complaint must establish that the individual had a right and ability to supervise the violations, as well as an obvious and direct financial interest in the misconduct.) (citation omitted); [DE 1, at Page ID # 2 (explaining Wigglesworth's control over the bar); DE 27 (Alcohol License) (listing Wigglesworth as "Partner")].

Despite the liability being established by the pleadings, the decision to grant default judgment is still a matter of Court discretion.  *Riding Films, Inc. v. John Does 129-193*, 2015 WL

---

[2]  The facts likewise establish Defendants' liability under § 553; courts generally have found that either cable or satellite transmissions of pirated programs violate both § 553 and § 605. *See, e.g.*, *Nat'l Satellite Sports, Inc.*, 253 F.3d at 914; *Joe Hand Promotions Inc. v. Orim, Inc.*, 2010 WL 3931108, at *1 (N.D. Ohio Oct. 5, 2010*); Buckeye Cablevision, Inc. v. Sledge*, 2004 WL 952875, at *1 (N.D. Ohio Apr. 8, 2004) (collecting cases). The sections provide for alternative relief.  *See* 47 U.S.C. §§ 553(c)(3) and 605(e)(3)(C).

127912, at *1 (S.D. Ohio Jan. 8, 2015), *report and recommendation adopted*, 2015 WL 574277 (S.D. Ohio Feb. 11, 2015). In making such a determination, the Court considers the relevant factors noted by the Sixth Circuit, specifically:

1) Possible prejudice to the plaintiff;

2) The merits of the claims;

3) The sufficiency of the complaint;

4) the amount of money at stake;

5) possible disputed material facts;

6) whether the default was due to excusable neglect; and

7) the preference for decisions on the merits.

*Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002) (citation omitted). Likewise, "where the damages are unliquidated […] the amount of damages must be proved." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (quoting *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1026 (5th Cir. 1982) (en banc).

The Court recommends JHP receive the default judgment sought, in part. The Complaint's allegations, and supporting exhibits, establish Defendants broadcasted JPH's product without paying JPH. The strict liability nature of § 605(a), eyewitness affidavit confirming the unlawful behavior on part of the Defendants, and Defendants' failure to respond all justifies a default judgment. Any alternative remedy would prejudice JPH.

**B.   RELIEF SOUGHT**

Initially, the Court finds an evidentiary hearing unnecessary. *See* FED. R. CIV. P. 55(b)(2); *See Vesligaj v. Peterson*, 331 F. App'x. 351, 355 (6th Cir. 2009) (noting that a hearing is required where it is needed "in order to ascertain the amount of damages with reasonable certainty[]"); *Joe Hand Promotions, Inc. v. RPM Mgmt. Co. LLC* 2011 WL 5389425, at *1 (S.D. Ohio Nov.

4

7, 2011) ("Although the court may conduct an evidentiary hearing to determine damages, an evidentiary hearing is not a prerequisite to the entry of default judgment if damages are contained in documentary evidence or detailed affidavits and can be ascertained on the record before the court.").

Turning to the damages, the Court recommends the damages sought be awarded, in part. First, JPH seeks statutory damages in the amount of $3,465 under § 605(e)(3)(C)(ii). The statute allows a base statutory recovery between $1,000 and $10,000, noting the Court's discretion in determining an amount it "considers just." 47 U.S.C. 605(e)(3)(C)(i)(II). Courts conducting a similar analysis have used claimant's loss as a benchmark in determining statutory damages. *Joe Hand Promotions, Inc. v. Williams*, 2010 WL 341513, at *2 (W.D. Ky. Jan. 22, 2010); *Joe Hand Promotions, Inc. v. Pickett*, at *3 (N.D. Ohio July 11, 2016) (awarding base statutory damages equal to the applicable licensing fee); *J & J Sports Prods., Inc. v. Zambrano*, 2015 WL 3682588, at *5 (N.D. Ohio June 12, 2015) (calculating statutory damages "based on what would have been a proper licensing fee"). Here, JPH explains that had "Defendant legally licensed the Event from Plaintiff, the licensing fee would have been $ 1,155." [DE 27, at Page ID # 80; *see also* DE 27-2 (Rate Card)]. JPH requests $3,465, specifically three times this amount, for additional economic damage via good will lost from legitimate authorized commercial establishments and reputational harm. [DE 27, at Page ID # 79-82]. This Court, and others in the circuit, have found such a multiplier appropriate. *See Joe Hand Promotions, Inc. v. Pat's Snack Bar, LLC*, 2020 WL 1923178, at *5 (E.D. Ky. Apr. 21, 2020) ("In this case, tripling the lost $788 rate fee, for a total base statutory award of $2,364, reasonably estimates Joe Hand's loss associated with Defendants' infringing conduct[.]"); *Joe Hand Promotions, Inc. v. Rizzi*, 2013 WL 6243824, at *3 (W.D. Tenn. Dec. 3, 2013) ("[T]he Court begins with the actual damages from the violation, but also considers

loss of goodwill from other establishments that properly purchased the Events but faced unauthorized competition from Rizzi[.]"). Accordingly, the Court finds that $3,465 is an appropriate remedy to offset the estimated loss resulting from Defendant's infringement and recommends JPH be awarded as such.

JPH next requests damages based on § 605(e)(3)(C)(ii)'s clause allowing up to $100,000 for infringing activity that "was committed willfully and for the purposes of direct or indirect commercial advantage or financial gain[.]" 47 U.S.C. § 605(e)(3)(C)(ii). JPH requests $10,395 in these enhanced damages, or three times those damages requested under § 605(e)(3)(C)(i)(II), to "achieve the statutory goals of restitution and deterrence." [DE 27, at Page ID # 84]. The Court finds that Defendants' actions were willful. "It is inconceivable that [Defendants'] could have inadvertently decoded the encrypted signal or accidentally altered cable services to result in the unauthorized broadcast." *Joe Hand Promotions, Inc.*, 2020 WL 1923178 at *5. Additionally, Defendants' advertisement showcasing the broadcast provides clear evidence that the act was not only intentional, but also for commercial or financial gain. [DE 27-6 (Facebook Posts)]. Clearly, Defendants' conduct was both intentional and for the purpose of soliciting additional bar patrons, in an effort both to obtain a commercial advantage over those not displaying the fight and to financially benefit from the greater number of sales. Consequently, some degree of damages enhancement is warranted.

Ultimately, the Court's discretion determines not only the appropriateness of enhancement, but also its breadth. 47 U.S.C. § 605(e)(3)(C)(ii). The Court relies on analysis from prior opinions in the district, particularly *Joe Hand Promotions, Inc. v. Pat's Snack Bar, LLC*, 2020 WL 1923178, at *5 (E.D. Ky. Apr. 21, 2020). There, JHP requested a four times multiplier enhancement in damages against a defaulted Defendant who committed a nearly identical violation as the one

currently before the Court. *Id.* The District Court, however, found such an enhancement unjustified for a host of factors. First, the violating establishment was only at half-capacity during the pirated broadcast. *Id.* at *6. Secondly, the establishment did not request a cover charge for entry during the broadcast. *Id.* Third, the broadcast was shown on only one of the bar's two televisions. *Id.* Finally, there was no evidence the establishment increased the cost for food and beverages during the broadcast. *Id.* The District Court found that though the "evidence demonstrates that the unauthorized UFC broadcast played a part" in increasing the establishment's patronage, it was a "relatively small" boost that suggested a four times multiplier for enhanced damages would be "unreasonably high." *Id.* Instead, the JHP was awarded just over a two-and-a-half time the base statutory amount enhancement, which the District Court stated satisfied the "deterrence and punishment goals of § 605(e)(3)(C)(ii)[.]" *Id.* at *7.

    The above analysis is applicable when considering an appropriate enhancement for the current case. Evidence provided by JPH indicated that the evening of the violating broadcast, Defendants' facility was capable of a 120-person seating capacity but had no more than 14 to 20 patrons at any time. [DE 27-3 (Affidavit of Clarence Horin)]. There was no cover charge required to enter Defendants' establishment. [*Id.*]. Defendants' bar had four televisions, and only one of those televisions, which was mounted behind the bar, was displaying the pirated UFC content. [*Id.*]. There is no indication that the cost of food or beverages was increased due to the broadcast. This analysis indicates a lower enhancement than requested by JPH. While Defendants unjustly benefitted from the illegal broadcast, the proportionally small number of customers shows that the act did not significantly increase Defendants revenue. Likewise, Defendants' decision to only display the fight on one of four possible televisions indicates it was unlikely that the UFC event was the sole patronage attraction. Instead, the Court would recommend an additional $7,000 in

7

enhanced damages, or just slightly above two times the base statutory amount. This provides the deterrence and penalty demanded by 605(e)(3)(C)(ii), compensates JHP for its tangible and intangible losses, and balances the actual commercial advantage or financial gain established by the record.

Finally, § 605 orders that courts "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). JPH requests $495 in costs ($400 in case filing and $95 to effectuate service) and $1,500 in attorney's fees (for six hours of substantive legal work, at a rate of $250 per hour). [DE 27-5 (Affidavit of Bryce Lenox)]. The costs and attorneys' fees appear reasonable per the record and JPH is statutorily entitled to recover. *See* 2020 WL 1923178 at *7. Thus, the Court recommends JPH's request be granted.

### III. CONCLUSION

Accordingly, for the reasons stated herein, the Court **RECOMMENDS**:

(1)  Plaintiff Joe Hand Productions, Inc.'s Motion for Default Judgment be **GRANTED IN PART**. [DE 27];

(2)  Plaintiff be awarded:

   a. $3,465 in statutory damages;

   b. $7,000 in enhanced damages;

   c. $495 in costs;

   d. $1,500 in attorney's fees;

   e.  totaling in a recoverable sum of $12,460.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within 14 days after being served with a copy of this recommended

decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Entered this 18th day of August, 2020.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge